352

Cunningham *v.* World Mutual Health & Accident Insurance Co., Appellant.

Argued April 14, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*James E. Meneses,* with him *William F. Caruthers,* for appellant.

*Charles H. Loughran,* with him *Loughran and Loughran,* for appellees.

OPINION BY WATKINS, J., June 11, 1964:

These are appeals from the judgments of the Court of Common Pleas of Westmoreland County in actions of assumpsit on public school accident insurance policies, in favor of John B. Cunningham and Dorothy Cunningham, his wife, and Joseph Beluch and Dora Beluch, his wife, the plaintiffs-appellees, and against World Mutual Health & Accident Insurance Co. of Pennsylvania, the defendant-appellant; and from the refusal, by the court below, of the motion for a new trial.

The actions were brought by the parents of Diana Beluch and Susan Kathleen Cunningham, both deceased, who were killed as a result of an automobile accident on their way home from school. The policy provided a fifteen hundred dollar coverage. The actions were first brought before arbitrators. Each arbitration board awarded judgment in favor of the plaintiffs. On appeal, the cases were consolidated and tried without a jury before Judge EARL S. KEIM, who awarded verdicts in favor of the plaintiffs. The motion for a new trial was denied after argument before the court en banc.

The pertinent portion of the policy in question reads as follows:

"(2) Traveling directly and uninterruptedly to or from the insured's residence, as defined herein, and the

school for regular school sessions, for such travel time as is required, but not to exceed one hour before school begins and not more than one hour after school is dismissed, or if additional travel time on the school bus is required, coverage hereunder shall extend for such additional travel time that might be necessary."

The plaintiffs' daughters were fatally injured while riding in an automobile driven by another high school student while on their way home from school. On the day of the accident the five girls who were riding in a private car were high school seniors who had arranged to have their school pictures taken on that day. Each of the students involved had permission of parents to use private transportation on this particular day. The school authorities obtained this permission from the parents of the students involved. The girls who were riding in the car at the time of the accident were Mary Louise Andritz, who was driving her father's car, Diana Beluch, Susan Kathleen Cunningham, Sharon McDevitt and Julia Rudolph.

On the day in question Diana and Susan Kathleen were picked up at their homes by Mary Louise Andritz. The trip to school and to the photographers and back to school took place without incident in the morning. School was dismissed at 3:40 o'clock p.m. and the girls met at the Andritz car in the school parking lot. They left immediately to take the girls home and proceeded directly from Bel-Avon High School to the McDevitt's home on route 819, which was about four miles from the school. They left the McDevitt girl off, turned around and were driving in the direction of Avonmore to distribute the remaining four girls to their respective homes. One-half mile north of the McDevitt home on highway Route 819, which is the direct route to Avonmore, the tragic accident occurred resulting in the almost instant death of the appellees' daughters. The time limit contained in the policy is

not involved because the accident occurred well within the one hour limitation.

The policy did not require that only authorized school buses be used as a means of travel to and from school, and as the court below put it, the insured could travel on foot if she so desired. It is true that the school authorities, although not requiring buses to be used as the only means of transportation, preferred the use of buses, but in this case, went to the trouble of securing permission of the parents to use private transportation. The policy made no restriction. We agree with the court below that the availability of bus transportation, at the time they used private car transportation, is immaterial.

The contention of the appellant company is that the terms of the policy were violated in that riding in a private automobile to deliver the McDevitt girl to her home, four miles from school and approximately seven miles from Avonmore, where the other girls lived, was not traveling "directly and uninterruptedly to or from the insured's residence and the school."

This case is controlled by the decision of this Court in *Dzurko v. Pilot Life Ins. Co.*, 195 Pa. Superior Ct. 267, 171 A. 2d 885 (1961), in which we said at page 274: "This group coverage was intended to protect parents from injury to their children while going to or from school. A reasonable, practical and fair interpretation of the intention of the parties must leave some elasticity in the meaning of the word 'directly' to school and home, so that in the light of the object of the coverage and the human nature of the children covered, reasonable deviation is permitted so long as there is no abandonment of the intended purpose of the provision."

In the *Dzurko* case, supra, we held that a visit to a downtown store by the insured on his way home was not an unreasonable deviation. In this case, if the

driver had delivered the girls in Avonmore first the same objection could be raised if an accident occurred as the Andritz girl was driving the McDevitt girl home. School buses, too, must set a schedule that doesn't always deliver those closest to the school to their homes first but must depend solely on highway geography. The geography of this school district indicates that the Bel-Avon High School which the girls attended is located in Salina. Avonmore is approximately four miles east of Salina. Sharon McDevitt lived on a farm four miles from the school in a southerly direction on legislative Route 819.

In the *Dzurko* case, supra, there was an admitted deviation by the boy's visit to the store and we determined that under a practical and reasonable interpretation of the policy it was a permitted deviation and not an abandonment of the intended purpose to go directly home. In this case there was no deviation, the driver of the car had to determine which of the girls should be taken home first and decided to deliver the McDevitt girl to her farm home, which was four miles from the school and approximately seven miles from Avonmore. If the driver had decided to take the Avonmore girls home first she would then be seven miles from the McDevitt home, and when she delivered the McDevitt girl, would have to make the return trip to her home in Avonmore unaccompanied. We agree with the court below, "In the present case, the policy provided for direct and uninterrupted travel and we cannot conceive an abandonment of purpose or any deviation as would void the rights of the parents of the insured, in fact the undisputed testimony is that the insured was on her way home."

The court below did not abuse its discretion in denying a new trial.

Judgments affirmed.