GREAT AMERICAN INSURANCE Co. *v.* BASS, et al.

In Banc.    Feb. 27, 1950.

No. 37392    44 So. (2d) 532)

Roy C. Tucker and George W. Currie, for appellant.

Williams & Williams, for appellees.

Alexander, J.

Appellant appeals from a judgment upon an insurance coverage of an airplane belonging to appellees.

The facts may be succinctly stated. Appellees were concluding a flight and after following the conventional flight pattern had made a three point landing from a northwesterly direction at a point about 500 or 600 feet from the northwest end of the landing strip. The strip was from 250 to 300 feet wide, unpaved but reasonably level. Its full length was about 1830 feet. The plane

landed, with throttle fully cut back, at a proper speed of 53 miles per hour and continued its landing roll under its own momentum a distance of about 900 feet, at which point its speed was about 5 or 10 miles per hour. No point is made that the pilot followed an unorthodox procedure in landing with the wind. Witnesses established that the wind sock showed no prevailing air currents during the period of glide and the landing roll.

As the operator was preparing to apply power with a view to turning about in order to taxi back to a parking area, it was struck by a sudden tail wind of about 25 or 30 miles per hour. Efforts to control the plane by braking seemed almost successful when it was again beset by a second gust and it was being propelled at a speed beyond brake control. In view of the limited length of the landing strip remaining ahead the pilot maneuvered the plane by left rudder and brake into a turn or ground loop. There is no testimony otherwise than that this was an accepted operation. The plane was caught by the force of the wind, turned completely over and demolished.

In this situation the point is sharpened to a definition of the terms of the insurance policy which covers all risks while not in flight and defines flight as ''The period from the start of actual take-off run, while in the air and until completion of the landing run.''

Was the landing run completed? Appellant's argument centers in a definition which construes residual momentum as a test of a continuing flight status. It would be difficult to define a take-off run otherwise than as a beginning and part of the consequent flight. The need for a steadily increasing speed with the definite objective of actual flight could well make immaterial whether the plane at a given period therein was air-borne or not. During a landing role the immediate objective is just the opposite. At some point during the deceleration process there must be found transition from the hazards incident to air-borne travel, including landing, to a stage where the pilot has acquired so complete a control over

the plane that he may safely elect to bring it to a full stop or proceed, under renewed power, to taxi to the point of parking or debarkation.

■■ If the language of the policy be ambiguous or doubtful a reasonable construction in favor of the insured is indicated. Moreover, the policy must be construed in the light of its purpose and the hazards against which it was designed to protect. Fleming v. Travelers Ins. Co., 206 Miss. 284, 39 So. (2d) 885.

The test of completed flight ought not to be continuing momentum since it requires less than expert knowledge to accept the fact that the landing roll is almost invariably continued without full stop into the taxiing procedures whereby a full and final stop is attained.

■■ The dividing line, under the policy, between flight and no flight must be found at that stage where the usual hazards of landing, per se, or as a final element of flight technique, have depressed the perils of flight to a minimum comparable to a complete stop. Once the risks of airborne flight and of ground contact have abated, the pilot regains full control over his plane subject only to ground hazards, whereas in flight he is dominated by dangers which place him in subjection to superior forces. It is not as important that he may with skill master these emergencies as that he must do so. The sudden gusts of wind, although constituting some danger while in flight, were nevertheless here a ground hazard.

Our conclusions are reinforced by the language of the application which was properly admitted as part of the contract which provided four optional coverages. The first is "All risks basis, except while the aircraft is in motion under its own power or the resulting momentum". The second, which was accepted, is "All risks basis while not in flight". It would seem that the contentions of appellant would have been plausible under the first, whereas construction of the second is aided by its evident contrast with the first and, in excluding by forceful implication

the element of momentum, casts the issue solely upon the policy definition of flight as above discussed.

The defendant, appellant here, offered no testimony. Its motion to exclude and for a directed verdict was properly overruled. The appellees procured an instruction that was in effect peremptory upon both liability and damages. Verdict and judgment were for appellees, but there was an award of only $5,000, although suit was for $5,485. There is no cross appeal.

The matter of damages invites some consideration. This is a valued policy in the sum of $6,000. Deductions in the event of total loss include pro rata depreciation on the basis of 20% per annum, and a fixed deductible share of the loss to be borne by the insured was fixed at $600, the policy having been in force two months. Therefore a total loss would justify a claim for $5,200, at most. Appellees included in their demand expenses of $85 covering drayage and storage of the wreckage. Whether this was in any event a liability of the insurer need not be decided since we have no hesitancy in finding that the verdict followed the testimony in adjudicating a total loss. The policy provides that "In any event where the amount paid hereunder is equal to the amount payable as a total loss, any salvage value remaining shall insure (sic) to the benefit of the insurer". We assume, without deciding, that the salvage has been held for the appellant and that since the verdict was for an amount less than the total net loss of the plane allowance of such expenses was denied by the jury. Contrast Calcote v. May, Miss., 42 So. (2d) 742.

Counsel have cited no authority to maintain their respective positions but have led us into the areas of *a priori* reasoning, in which we have found ample materials for our conclusion.

Affirmed.